134 Nev., Advance Opinion 51

## IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| MARIO LABARBERA, AN INDIVIDUAL,<br>Appellant,<br>vs.<br>WYNN LAS VEGAS, LLC, D/B/A WYNN LAS VEGAS, A NEVADA LIMITED LIABILITY COMPANY,<br>Respondents. | No. 71276<br><br>**FILED**<br><br>JUL 19 2018<br><br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY<br>CHIEF DEPUTY CLERK |

Appeal from a final judgment in a breach of contract action. Eighth Judicial District Court, Clark County; Ronald J. Israel, Judge.

*Reversed and remanded with instructions.*

Jeffrey R. Albregts, LLC, and Jeffrey R. Albregts, Las Vegas, for Appellant.

Semenza Kircher Rickard and Lawrence J. Semenza, III, Christopher D. Kircher, and Jarrod L. Rickard, Las Vegas, for Respondent.

BEFORE DOUGLAS, C.J., PICKERING and HARDESTY, JJ.

*OPINION*

By the Court, HARDESTY, J.:

Respondent Wynn Las Vegas, LLC, filed a breach of contract action to collect $1,000,000 in unpaid casino markers from appellant Mario LaBarbera. In this appeal, we must determine whether the district court erred when it precluded LaBarbera from testifying at trial by video conference from Italy and excluded evidence of his intoxication.

18 - 27541

We conclude that the district court abused its discretion under the Nevada Supreme Court Rules Part IX-B(B) when its written order summarily denied LaBarbera's request to testify at trial using audiovisual equipment. While recognizing the very high burden required for a voluntary intoxication defense in a contract action, we also conclude that the district court abused its discretion when it applied an incorrect standard to exclude any evidence of intoxication. We reverse the judgment and remand for a new trial.

## FACTS AND PROCEDURAL HISTORY

LaBarbera is an Italian citizen and business owner who serves as a consultant for the pharmaceutical industry. He claims to suffer from gambling addiction, as certified in Italy, and does not speak any English. LaBarbera visited Las Vegas in late March through early April of 2008 after being recruited by Alex Pariente, an Italian-speaking former employee and VIP host of Wynn. While staying at the Wynn, LaBarbera gambled and lost $1,000,000 of his own money. Wynn then extended $1,070,000 worth of gaming credit in the form of casino markers to LaBarbera, $1,000,000 of which was left unpaid. LaBarbera claims he was intoxicated at the time he signed the casino markers and that the signatures on the markers are not his.

Shortly after LaBarbera left Las Vegas, Wynn filed a complaint with the Clark County District Attorney's Office for passing bad checks in violation of NRS 205.130,[1] resulting in a bench warrant being issued for LaBarbera's arrest. Wynn also filed a breach of contract suit against

---

[1]NRS 205.130 was amended in 2011 and now states that an instrument's amount must be greater than $650, not $250. 2011 Nev. Stat., ch. 41, § 11, at 162-63. This change in law is irrelevant to our rulings here.

 

LaBarbera. Before the jury trial, Wynn filed three motions in limine seeking to exclude evidence or argument of LaBarbera's gambling addiction, intoxication, and any alleged forgery. The district court granted the first two motions, prohibiting LaBarbera from arguing about his gambling addiction or intoxication at trial, but denied the third motion, allowing LaBarbera to argue that the casino markers were invalid forgeries. Because LaBarbera's outstanding bench warrant would cause him to be arrested if he came to Clark County to testify, he moved for permission to testify at trial from Italy via video conference and an interpreter. The district court denied LaBarbera's motion and the trial proceeded without his presence.

The jury returned a verdict in favor of Wynn in the principal amount of $1,000,000. Thereafter, the district court entered a final judgment awarding Wynn contract interest at a rate of 18 percent per annum, attorney fees, costs, and prejudgment interest, totaling $2,626,075.81. This appeal followed.

## DISCUSSION

LaBarbera seeks reversal of the judgment, arguing, among other things, that the district court abused its discretion when it refused to let him testify by audiovisual communication and excluded evidence of his intoxication.[2]

---

[2]LaBarbera also argues that Wynn's claims should have been barred by the doctrines of unclean hands and laches, that the casino markers were improperly classified under the bad check statute, and that the district court abused its discretion by excluding evidence of his bench warrant and allowing Wynn to call untimely disclosed witnesses. We conclude that these arguments lack merit. LaBarbera also claims that the district court erred when it excluded evidence of his gambling addiction, but we conclude this claim lacks merit under NRS 463.368(6) (stating that a patron's claim of

*The district court abused its discretion by denying LaBarbera's motion to testify via video conference and an interpreter*

LaBarbera argues that the district court abused its discretion when it denied his motion to testify from Italy via video conference with an interpreter. Specifically, LaBarbera points to NRCP 43(a), which states that "[t]he court may, for good cause shown in compelling circumstances and upon appropriate safeguards, permit presentation of testimony in open court by contemporaneous transmission from a different location." LaBarbera contends that he made a sufficiently compelling showing of special circumstances, and it was an abuse of discretion for the district court to refuse to accommodate him. Citing *Barry v. Lindner*, 119 Nev. 661, 668, 81 P.3d 537, 542 (2003), Wynn argues that telephonic or video conference testimony is not permissible at trial absent a showing of special circumstances. Wynn contends that LaBarbera failed to demonstrate such a showing or how he would preserve appropriate safeguards.

Neither LaBarbera, Wynn, nor the district court reference Part IX-B(B) of the Nevada Supreme Court Rules, which addresses this issue. Part IX-B(B), Rule 2 states that "[t]o improve access to the courts and reduce litigation costs, courts shall permit parties, to the extent feasible, to

---

having a gambling disorder is not a defense in an action to enforce a gambling debt). Further, LaBarbera argues that the district court abused its discretion when it gave jury instruction number 36, which read: "[s]imilarly, whether a person cannot read, write, speak or understand the English language is also immaterial to whether an agreement written in English is enforceable. Prior to signing a contract, a person has the duty to learn the terms of the contract." However, because LaBarbera did not object to the inclusion of this instruction at trial, his argument is waived. *See J.A. Jones Constr. Co. v. Lehrer McGovern Bovis, Inc.*, 120 Nev. 277, 285, 89 P.3d 1009, 1015 (2004) ("No party may assign as error the giving or the failure to give an instruction unless he objects . . . ." (quoting NRCP 51(c))).

 

appear by simultaneous audiovisual transmission equipment at appropriate proceedings pursuant to these rules." We note that the rule includes the word "shall," and "[i]n these rules . . . '[s]hall' is mandatory." SCR Part IX-B(B)(1)(5). "Appropriate proceedings" include "[t]rials . . . provided there is good cause as determined by the court in accordance with Rule 1(6)." SCR Part IX-B(B)(4)(1)(a). "'Good cause' may consist of one or more of the following factors as determined by the court: . . . [w]hether any undue surprise or prejudice would result; . . . convenience of the parties, counsel, and the court; . . . cost and time savings." SCR Part IX-B(B)(1)(6)(b)-(d). The *Barry* case cited by Wynn predates Part IX-B(B) of the Nevada Supreme Court Rules—which became effective on July 1, 2013—by ten years and thus does not control here. *See generally* SCR Part IX-B(B); *Barry*, 119 Nev. at 661, 81 P.3d at 537.

We conclude that the district court abused its discretion in denying LaBarbera's request to testify via video conference. The Nevada Supreme Court Rules favor accommodation of audiovisual testimony upon a showing of good cause. LaBarbera demonstrated in his motion that good cause existed since he showed convenience and cost and time savings, and he otherwise would be unable to testify at all. Additionally, Wynn's arguments fail to establish how LaBarbera's testimony by video conference would have caused any undue surprise or prejudice. During discovery, Wynn took LaBarbera's deposition in Italy and some of the deposition testimony was used at trial. Moreover, the district court summarily denied LaBarbera's motion without explanation. We conclude that the district court abused its discretion and violated the policy promoted by NRCP 43(a) and SCR Part IX-B(B), Rule 2. Additionally, we perceive this error to be prejudicial because LaBarbera's absence conveyed to the jury a lack of

interest in the case and prevented him from responding to other testimony presented at trial.

*The district court abused its discretion by excluding evidence of LaBarbera's intoxication*

LaBarbera argues that a lack of capacity due to excessive intoxication is a valid defense to a contract claim and the district court abused its discretion when it excluded evidence of his intoxication at the time he signed the casino markers. In his deposition, LaBarbera claimed that Wynn continually brought drinks he did not order, that he was especially intoxicated while gambling, and that on one occasion he became intoxicated to the point where he became physically ill and vomited. Wynn argues that LaBarbera never complained or brought attention to his intoxication while he executed multiple gaming markers over several days. Wynn cites to cases showing the extremely high burden required to prove a voluntary intoxication defense and claims that LaBarbera's argument fails because he cannot identify any specific facts about how much or how long he drank.

In the context of capacity to contract, this court has held that intoxication may render a person incompetent where "actual intoxication dethroned his reason, or that his understanding was so impaired as to render him mentally unsound when the act was performed." *Seeley v. Goodwin*, 39 Nev. 315, 324-25, 156 P. 934, 937 (1916) (internal quotation marks omitted). According to the Restatement,

> [a] person incurs only voidable contractual duties by entering into a transaction if the other party has reason to know that by reason of intoxication
>
> (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or

(b) he is unable to act in a reasonable manner in relation to the transaction.

Restatement (Second) of Contracts § 16 (Am. Law Inst. 1981). In addition, in dicta, *Seeley* recognizes a duty on the part of an intoxicated person to promptly disaffirm the contract. *See Seeley*, 39 Nev. at 323, 156 P. at 936; *see also* Restatement (Second) of Contracts § 16 cmt. c ("On becoming sober, the intoxicated person must act promptly to disaffirm [the contract]."). The rule in the Restatement is an extension of what this court previously held in *Seeley*, and we adopt it as the appropriate standard for an intoxication defense in a contract action.

In proving intoxication, or a subsequent ratification, the burden of proof is usually the higher standard of clear and convincing evidence.

> In an action on a contract, a party must present convincing proof of claims that due to intoxication at the time of making a contract, the party was bereft of mental faculties. When a party to a contract was lacking in mental capacity at the time of execution by reason of drunkenness, proof of a subsequent ratification must be clear and convincing.

17B C.J.S. *Contracts* § 988 (2018) (footnote omitted). Although some courts have applied a preponderance of the evidence standard, *see Ewert v. Chirpich*, 211 N.W. 306, 307 (Minn. 1926), most courts that have reviewed this issue have applied the clear and convincing evidence standard, *see In re Wills*, 126 B.R. 489, 497 (Bankr. E.D. Va. 1991); *Van Meter v. Zumwalt*, 206 P. 507, 508-09 (Idaho 1922); *Coppolina v. Radice*, 164 N.E. 643, 644 (Ohio Ct. App. 1928); *In re Amending & Revising Okla. Unif. Jury Instructions—Civil*, 217 P.3d 620, 625 (Okla. 2009). We adopt the clear and convincing standard. On remand, the district court should instruct the jury on both the correct rule of law and burden of proof.

 

When the district court granted Wynn's motion in limine to exclude evidence of intoxication, it relied on *FGA, Inc. v. Giglio*, 128 Nev. 271, 278 P.3d 490 (2012). The district court stated:

> In [*Giglio*], there was evidence of drinking, but they precluded anybody from talking about that because there's nobody to testify regarding the fact that the individual was—had drank so much that they were, in fact, intoxicated.

The district court further stated, "I think that the case law and the statutes are clearly—you know, voluntary intoxication is not a defense. If it was, half the people in the casino could ask for their money back because they would say: Hey, they gave me a free drink, I kept drinking."

*Giglio* was a tort case in which this court affirmed the district court's decision to exclude evidence of the plaintiff's alcohol consumption because there was insufficient evidence that she was intoxicated or that the intoxication caused the injury. 128 Nev. at 285-86, 278 P.3d at 499. *Giglio* did not involve a contract dispute nor hold that intoxication was not a valid contract defense. *Id.* at 275-76, 278 P.3d at 493. We conclude that *Giglio* does not provide the district court with an adequate basis for excluding LaBarbera's intoxication evidence, as it is too factually dissimilar and does not provide the applicable rule of law. Here, LaBarbera, as the defendant, was trying to use evidence of his own intoxication to show lack of capacity in a contract dispute.

Wynn does not argue that the district court's legal analysis was correct. Instead, the essence of Wynn's argument is that the voluntary intoxication defense is disfavored and the standard of proof is very high. Wynn also argues that even if LaBarbera was legally incapacitated, he was required to disavow the contract after regaining capacity. *See Hernandez v. Banks*, 65 A.3d 59, 67 (D.C. 2013) ("The power of avoidance also

 

terminates if the incapacitated party, upon regaining capacity, affirms or ratifies the contract."). Wynn's arguments tend to show that LaBarbera may have difficulty proving his voluntary intoxication defense at trial, but those arguments do not justify the district court's decision to bar LaBarbera from making his argument altogether.

We conclude that the district court abused its discretion in excluding the intoxication evidence because its ruling was erroneous under *Seeley* and misinterpreted the holding in *Giglio*. *See Staccato v. Valley Hosp.*, 123 Nev. 526, 530, 170 P.3d 503, 506 (2007) (stating that "the district court abuses its discretion if it applies an incorrect legal standard"). On remand, we instruct the district court to apply the correct standard, set forth in the Restatement, to determine the admissibility of LaBarbera's intoxication evidence.

## CONCLUSION

The district court abused its discretion by denying LaBarbera's request to appear via video conference in violation of SCR Part IX-B(B), which states that courts shall, "to the extent feasible," permit parties to appear via simultaneous audiovisual transmission at trial where good cause is shown. We further hold that the district court abused its discretion by excluding evidence of LaBarbera's intoxication when it improperly relied on *FGA, Inc. v. Giglio*, 128 Nev. 271, 278 P.3d 490 (2012).

Accordingly, we reverse the district court's judgment and remand with instructions for the district court to conduct a new trial on all

issues, consistent with this opinion. Additionally, we reverse the district court's award of contract interest, attorney fees, costs, and prejudgment interest.

                                                   _____ , J.
                                                       Hardesty

We concur:

_____ , C.J.
Douglas

_____ , J.
Pickering

SUPREME COURT
OF
NEVADA

(O) 1947A